IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:20-CV-00276-RJC-DSC

| | |
|---|---|
| MANUEL ROLDAN, on behalf of himself and all others similarly situated, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> BLAND LANDSCAPING COMPANY ) <br> INC., ) <br> ) <br> Defendant. ) | **MEMORANDUM** <br> **AND** <br> **RECOMMENDATION** |

**THIS MATTER** is before the Court on "Defendant's Partial Motion to Dismiss or for Judgment on the Pleadings," Doc. 18, and the parties' briefs and exhibits.

The Motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and is now ripe for the Court's consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Defendant's Motion be <u>denied</u> as discussed below.

## I. PROCEDURAL AND FACTUAL BACKGROUND

Accepting the factual allegations of the Collective and Class Action Complaint, Doc. 1, as true, Plaintiff Manuel Roldan is a full-time foreman for Bland Landscaping Company Inc. <u>Id.</u> at 6. Roldan brings this action on behalf of himself and other current and former foremen ("Plaintiffs") working for Bland. <u>Id.</u> at 1. As full-time foremen, Plaintiffs service four to six commercial properties per shift. <u>Id.</u> at 6. Bland deducts a "uniform services" fee each pay period, regardless of whether Plaintiffs use the uniform services offered. <u>Id.</u> at 10.

Bland's work is seasonal, so work hours vary. Doc. 1 at 7-8. Plaintiffs typically work at least forty-two hours per week from January to May; fifty to sixty hours per week from May to September; and thirty-seven to forty-two hours per week from September to January. Id. Regardless of the number of hours worked, Bland guaranteed Plaintiffs a base salary paid each week. Id.

Plaintiffs are scheduled to receive a one-hour lunch break. Id. at 7. But they "routinely work through their lunch breaks" and only take a "full, uninterrupted lunch break approximately twice a week." Id. at 7, 15. Regardless of whether they are able to take an uninterrupted lunch break, Bland deducts one hour from their total hours worked each shift. Id. at 7.

Bland paid Plaintiffs a salary under the fluctuating workweek method.[1] Id. at 2; Doc. 18-2. Under this policy, Bland paid Plaintiffs a fixed weekly salary and overtime compensation equal to one-half their regular weekly rate of pay. Doc. 1 at 8.[2]

On May 13, 2020, Plaintiff filed this action on behalf of himself and all similarly situated employees in the United States District Court for the Western District of North Carolina. The Complaint alleges violations of the Fair Labor Standards Act ("FLSA") and the North Carolina

---

[1] The United States Department of Labor promulgated the fluctuating workweek method under the FLSA. See 29 C.F.R. § 778.114. "An employer may use the fluctuating workweek method to properly compute overtime compensation based on the regular rate for a nonexempt employee" if employees have (1) hours that fluctuate from week to week; (2) a fixed salary that does not vary with the number of hours worked; (3) a salary sufficiently large to cover the minimum wage; and (4) a clear mutual understanding between employer and employee that the employer will pay the fixed salary regardless of the hours worked. 29 C.F.R. § 778.114(a)(1)-(4). If these requirements are met, then the employer computes the regular rate of pay by dividing the weekly salary by the total number of hours worked that week, and satisfies its overtime pay obligation by paying a premium equal to half that amount for each overtime hour worked. 29 C.F.R. § 778.114(a)(5). "Payment for overtime hours at not less than one-half such rate satisfies the overtime pay requirement because such hours have already been compensated at the straight time rate by payment of the fixed salary and non-excludable additional pay." Id.

[2] In weeks that Plaintiffs work less than forty hours, Bland divides their salary by forty hours to determine the hourly rate and then compensates them "an hourly rate multiplied by the hours worked less than 40 in one week." Doc. 1 at 8. Therefore, for weeks when Plaintiffs work less than forty hours per week, they are paid as hourly employees. Id. In weeks that Plaintiffs work more than forty hours, Bland pays half-time for any hours worked over forty hours, instead of time and one-half. To determine Plaintiffs' half-time rate, Bland divides their weekly "salary" by the total number of hours worked that week and then halves the quotient. Bland then multiplies that half-time rate by the hours of overtime. Id.

Wage and Hour Act ("NCWHA"). Specifically, he brings claims for (1) unpaid overtime wages under the FLSA, 29 U.S.C. § 207; (2) reimbursement under the NCWHA for improper deductions for uniforms and uniform cleaning services under N.C. Gen. Stat. § 95-25.8; and (3) unpaid wages under the NCWHA, including overtime resulting from Bland's miscalculation of wages and work performed during lunch breaks, N.C. Gen. Stat. § 95-25.6.

On August 6, 2020, the Court entered a Pretrial Order and Case Management Plan. Doc. 12. Following entry of that Order, the parties engaged in extensive written discovery, completed the depositions of Plaintiff, the only opt-in Plaintiff to date, and the Rule 30(b)(6) deposition of Bland. Docs. 15, 17, 20-2, 20-4.

On February 3, 2021,[3] Defendant filed a Partial Motion to Dismiss or for Judgment on the Pleadings. Doc. 18. Bland moves to dismiss Plaintiff's NCWHA claims for overtime compensation under the "payday" statute, N.C. Gen. Stat. § 95-25.6.

## II. DISCUSSION

### A. Standard of Review

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains

---

[3] Plaintiff also filed a Motion to Certify Class Conditionally Pursuant to the Fair Labor Standards Act, for Court-Authorized Notice to be Issued Under 29 U.S.C. Section 216(b), for Class Certification Under Fed. R. Civ. P. 23, and for Appointment of Class Counsel Under Fed. R. Civ. P. 23(g). Doc. 19.

3

Case 3:20-cv-00276-KDB-DSC     Document 29     Filed 03/15/21     Page 3 of 15

enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555) (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true). Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark [] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678-79.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 679. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)).

4

The sufficiency of the factual allegations aside, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." Sons of Confederate Veterans v. City of Lexington, 722 F.3d 224, 228 (4th Cir. 2013) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)). Indeed, where "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations, a claim must be dismissed." Neitzke v. Williams, 490 U.S. at 328; see also Stratton v. Mecklenburg Cnty. Dept. of Soc. Servs., 521 Fed. Appx. 278, 293 (4th Cir. 2013)). The court must not "accept as true a legal conclusion couched as a factual allegation." Anand v. Ocwen Loan Servicing, LLC, 754 F.3d 195, 198 (4th Cir. 2014).

Bland also moves for a judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Rule 12(c) provides that "after the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." United States v. Charlotte-Mecklenburg Hosp. Auth., 248 F. Supp. 3d 720, 725 (W.D.N.C. 2017) (quotations and alteration omitted). A motion for judgment on the pleadings is governed by the same standard as a motion to dismiss under Rule 12(b)(6). Id. at 725 (citing Occupy Columbia v. Haley, 738 F.3d 107, 115 (4th Cir. 2013)).

On a motion to dismiss, courts may "consider documents that are explicitly incorporated into the complaint by reference, and those attached to the complaint as exhibits," as well as an exhibit to the motion to dismiss if the exhibit was "integral to the complaint and there is no dispute about the document's authenticity." Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016) (citations omitted). If the plaintiff's allegations in the complaint conflict with the plain language of the exhibit ultimately attached to a motion to dismiss, "the exhibit prevails." Id. (quoting Fayetteville Inv'rs v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991)).

### B.  Plaintiff's payday claim for unpaid overtime is not preempted by the FLSA.

North Carolina's "payday" statute requires employers to "pay every employee all wages and tips accruing to the employee on the regular payday." N.C. Gen. Stat. § 95-25.6. See McLaurin v. Prestage Foods, Inc., 271 F.R.D. 465, 471 (E.D.N.C. 2010); DeHoll v. Eckerd Corp., No. 1:18-cv-280, 2018 WL 5624150, at *5 (M.D.N.C. Oct. 30, 2018). Defendant contends that Roldan's overtime compensation claim, brought under the "payday" statute, is preempted by the FLSA. Defendant does not seek dismissal of Plaintiff's FLSA claim or his claim that Bland improperly deducted amounts from his pay for uniform-related services under the NCWHA.

Contrary to Defendant's contention, there is no governing authority from the Fourth Circuit on the fundamental question presented here.

In support of its preemption argument, Defendant relies on Anderson v. Sara Lee Corp., 508 F.3d 181, 191 (4th Cir. 2007). In Anderson, the court explained the "longstanding principles of preemption" that guide the assessment of whether the FLSA invalidates a plaintiff's asserted state law claims. 508 F.3d at 191. "The Supremacy Clause of the Constitution renders federal law 'the supreme Law of the Land ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.'" Id. (quoting U.S. Const. art. VI, cl. 2). Accordingly, federal statutes and regulations can "nullify conflicting state or local actions. Id. (quoting College Loan Corp. v. SLM Corp., 396 F.3d 588, 595 (4th Cir. 2005)).

Under the Supremacy Clause, federal law may preempt state law in three ways: (1) express preemption, (2) field preemption, or (3) conflict preemption. See Pinney v. Nokia, Inc., 402 F.3d 430, 453 (4th Cir. 2005) (citing Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516 (1992)); Hillsborough Cty. v. Automated Med. Labs., Inc., 471 U.S. 707, 713 (1985); S. Blasting Servs., Inc. v. Wilkes Cty., 288 F.3d 584, 590 (4th Cir. 2002)). "There is no contention that

6

Congress has expressly preempted state wage laws nor that the FLSA reflects a statutory intent to preempt the entire field of wage regulations." In re Lowe's Companies, Inc. Fair Lab. Standards Act & Wage & Hour Litig., No. 5:20-MD-02947-KDB-DSC, 2021 WL 374976, at *4 (W.D.N.C. Feb. 3, 2021). Therefore, conflict preemption is at issue here. Conflict preemption occurs when a state law "'actually conflicts with federal law.'" Anderson, 508 F. 3d. at 191 (citations omitted).

To determine whether an actual conflict exists between state and federal law, the court must "resolve the more specific inquiries of whether 'it is impossible to comply with both state and federal law' or 'whether the state law stands as an obstacle to the accomplishment of the full purposes and objectives' of federal law." Anderson, 508 F.3d at 191-92 (quoting Silkwood v. Kerr–McGee Corp., 464 U.S. 238, 248 (1984)). The court in Anderson termed this doctrine "obstacle preemption." See Lowe's Companies, Inc., 2021 WL 374976 at *4 (quoting Anderson, 508 F.3d at 192).

The Court proceeds from the "basic assumption that Congress did not intend to displace state law." Anderson, 508 F.3d at 192 (quoting Maryland v. Louisiana, 451 U.S. 725, 746 (1981)); see also Cipollone, 505 U.S. at 516 ("Consideration of issues arising under the Supremacy Clause starts with the assumption that the historic police powers of the States are not to be superseded by Federal Act unless that is the clear and manifest purpose of Congress.")) (internal quotation marks and alterations omitted). "The purpose of Congress is therefore the ultimate touchstone of a preemption analysis." Lowe's Companies, Inc., 2021 WL 374976 at *4 (internal quotation marks omitted). "Anderson makes clear that the FLSA sits squarely in that field, holding that Congress enacted the FLSA to eliminate labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general

well-being of workers." Id. (internal quotation marks omitted). See 29 U.S.C. § 202(a); Anderson, 508 F. 3d at 192-93 ("Congress prescribed exclusive remedies in the FLSA for violations of its mandates.").

While Anderson is instructive, the facts are distinguishable from those at issue here. In Anderson, employees sued their employer to recover pay for time spent putting on and taking off their required uniforms before working their various production jobs. 508 F.3d at 193-94. Plaintiff employees did not assert any claims under the FLSA but attempted to recover for their "FLSA-based" claims on state common law theories of recovery. Id. Unlike in Anderson, Plaintiff is not "merely using state law to enforce [his] rights under the FLSA" here. Martinez–Hernandez v. Butterball, LLC, 578 F.Supp.2d 816, 819-20 (E.D.N.C. 2008). Rather, Plaintiff alleges his overtime claim "under the FLSA and the NCWHA as part of his entire unpaid wages claim pursuant to N.C. Gen. Stat. § 95-25.6" for "all owed, earned, and accrued wages, including, but not limited to, regular, straight, overtime wages, and illegally withheld wages." Doc. 23 at 10.

Anderson is not dispositive here and, as this Court in Lowe's Companies, Inc. explained, its holding can be easily understood:

> [I]t would plainly impair the congressional judgment as to the proper remedy for FLSA violations to allow a violation of the FLSA itself to be derivatively subject to increased state law tort remedies for negligence or fraud. However, that is quite different from and simply does not reach the question of whether states can enact parallel wage and hour laws. Indeed, in Anderson the court specifically noted the absence of any state wage and hour claim. Thus, the Court agrees with Plaintiffs that Anderson does not decide whether the FLSA preempts state law claims seeking the same recovery as provided under the FLSA for overtime claims.

2021 WL 374976 at *5. Since Anderson, district courts in the Fourth Circuit have reached different conclusions on whether the FLSA preempts parallel state wage and hour laws.

In some cases, the courts hold that claims that "merely duplicate" FLSA claims are preempted. See, e.g., Moodie v. Kiawah Island Inn Co., LLC, 124 F. Supp. 3d 711, 724 (D.S.C. 2015) ("Plaintiffs' state law claims [were] not 'merely duplicative' of their FLSA claims" and not preempted); Throckmorton v. Summerville Police Dep't, No. 2:20- CV-1936-RMG, 2020 WL 3490212, at *4 (D.S.C. June 26, 2020) (granting judgment on the pleadings "to the extent ... Plaintiff seeks compensation under the [South Carolina payday statute] for overtime pay otherwise required by the FLSA ... [because] Anderson clearly provides that [those] claims are preempted by the FLSA"); Nimmons v. RBC Ins. Holdings (USA) Inc., No. 6:07-cv-2637, 2007 WL 4571179, at *3 (D.S.C. Dec. 27, 2007) (dismissing Plaintiff's state law claims for overtime as duplicative of those protected by the FLSA).

But in other cases, the courts hold that a plaintiff may bring separate state wage and hour law claims outside FLSA preemption so long as there is no duplicate recovery. See, e.g., Scruggs v. Skylink Ltd., No. 3:10-0789, 2011 WL 6026152 *9 (S.D. W. Va. Dec. 2, 2011) ("It is well established that the FLSA, in its core areas of protection—minimum wage and overtime regulation—has a relatively narrow preemptive effect as it does not completely preempt state laws but only preempts them to the extent that they are less generous than the FLSA."); Yong Le Xue v. J&B Spartanburg LLC, No. 7:16-00340-MGL, 2016 WL 3017223 at *2 (D.S.C. May 26, 2016) ("[T]he FLSA does not prevent states from creating a parallel regulatory scheme that provides additional protections for employees ... claims that are 'separate and distinct' from a plaintiff's FLSA claims are not preempted by the FLSA."); Martinez-Hernandez, 578 F. Supp. 2d at 820 (applying this analysis to a claim alleging violation of the NCWHA); Regan v. City of Hanahan, No. 2:16-1077-RMG, 2017 WL 1244041 at *2-3 (D.S.C. Apr. 3, 2017) ("Since the

Fourth Circuit's 2007 decision in Anderson, courts in this circuit have frequently found that plaintiffs' state law [unpaid] wage claims are not preempted by the FLSA.").

In Lowe's Companies, Inc., this Court recently explained how to apply Anderson's preemption analysis to different factual circumstances. 2021 WL 374976 at *5.

> With due regard for the principles of federalism and the basic presumption that Congress did not intend to displace state law, Anderson, 508 F. 3d at 192, the Court finds that the FLSA is not intended to preempt independent state wage and hour laws that cover the same conduct as the FLSA, even if those laws offer Plaintiffs additional remedies or procedural protections. Again, the touchstone of the Court's analysis is the intent of Congress as expressed in the statute. Rather than indicate an intention to preempt state law, the FLSA expressly contemplates that states may enact stricter minimum wage and overtime requirements that an employer must follow notwithstanding the FLSA. See 29 U.S.C. § 218(a) ("No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter or a maximum work week lower than the maximum work week established under this chapter....").
>
> Moreover, a finding of preemption here would bar enforcement of all state wage and hour laws that did not exceed the standards of the FLSA, a significant intrusion on state authority and a reversal of the traditional presumption against preemption, which is particularly strong given states' lengthy history of regulating employees' wages and hours. See Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., 519 U.S. 316, 330, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997) (presuming that ERISA did not preempt a state wage law in light of the state's lengthy history of wage regulation). Therefore, in light of the strong presumption against preemption in this area, the possibility for a plaintiff to obtain a more favorable recovery under a state wage and hour law does not stand as an "obstacle" to the purpose of the FLSA, which Anderson described as seeking to "eliminate labor conditions detrimental to ... workers." See Knepper v. Rite Aid Corp., 675 F.3d 249, 262-64 (3d Cir. 2012) (holding that state wage laws were not preempted by the FLSA and distinguishing Anderson on the same grounds discussed above).

Id. at *6 (internal quotation marks omitted). The Court agrees with the holding in Lowe's Companies, Inc. that the FLSA "does not preempt state laws that provide employees the same or greater protections." 2021 WL 374976 at *4. While the FLSA preempts causes of action that seek compensation under state law for overtime pay mandated by the FLSA or where plaintiffs received less than the federal minimum wage, the payday statute serves a different purpose. See

Martinez-Hernandez, 578 F. Supp. 2d at 819. "The payday claim is designed to protect employees who did not receive the pay owed to them, independent of the overtime rate required by the FLSA." Torres-Tinajero v. Alpha Constr. of the Triad, Inc., No. 1:18CV160, 2020 WL 5411748, at *4 (M.D.N.C. Sept. 9, 2020). Here, Plaintiff is seeking more than just overtime wages.

Therefore, these state law overtime claims based upon the North Carolina payday statute are not preempted by the FLSA under "obstacle preemption" unless the "FLSA preempts the state law under the FLSA's savings clause."[4] See Lowe's Companies, Inc, 2021 WL 374976 at *7. See, e.g., Torres-Tinajero v. Alpha Constr. of the Triad, Inc., 2019 WL 3317351, at *3 (M.D.N.C. July 24, 2019) ("N.C. Gen. Stat. § 95-25.14 does not direct FLSA preemption as to Plaintiff's claim brought pursuant to N.C. Gen. Stat. § 95-25.6 for failing to pay promised wages when due on Plaintiff's regular payday."); Mebane v. GKN Driveline North America, Inc., 1:18-cv-892-LCB-LPA, 2020 WL 6525820, at *5 (M.D.N.C. Nov. 5, 2020) (holding that FLSA did not preempt Plaintiff's payday claim under N.C. Gen. Stat. § 95-25.6); Hanson-Kelly v. Weight Watchers Intern., Inc., 1:10-cv-65, 2011 WL 2689352, at *4-5 (M.D.N.C. July 11, 2011) (holding that NCWHA claims were not preempted because plaintiff was seeking unpaid wages for hours actually worked).

For those reasons, the undersigned respectfully recommends that Defendant's Partial Motion to Dismiss or for Judgment on the Pleadings with respect to preemption be denied.

---

[4] The FLSA contains a savings clause, which provides that: "No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter or a maximum work week lower than the maximum work week established under this chapter…[.]." 29 U.S.C. § 218(a).

### C. Plaintiff's payday claim for unpaid overtime is not exempted under the NCWHA.

Defendant contends that Roldan's claims for unpaid overtime wages and improper deductions for lunch fall under the overtime provisions of state law and are exempted from coverage under the NCWHA.

The overtime provision of the NCWHA requires employers to "pay each employee who works longer than 40 hours in any workweek at a rate of not less than time and one half of the regular rate of pay of the employee for those hours in excess of 40 per week." N.C. Gen. Stat. § 95-25.4. However, the NCWHA provides an exemption to several of its provisions:

> The provisions of G.S. 95-25.3 (Minimum Wage), G.S. 95-25.4 (Overtime), and G.S. 95-25.5 (Youth Employment), and the provisions of G.S. 95-25.15(b) (Record Keeping) as they relate to these exemptions, do not apply to: (1) Any person employed in an enterprise engaged in commerce or in the production of goods for commerce as defined in the Fair Labor Standards Act[.]

N.C. Gen. Stat. § 95-25.14(a)(1). In addition to these exemptions, N.C. Gen. Stat. § 95-25.22(a) provides recovery for unpaid wages:

> Any employer who violates the provisions of G.S. 95-25.3 (Minimum Wage), G.S. 95-25.4 (Overtime), or G.S. 95-25.6 through 95-25.12 (Wage Payment) shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, their unpaid overtime compensation, or their unpaid amounts due under G.S. 95-25.6 through 95-25.12, as the case may be, plus interest at the legal rate set forth in G.S. 24-1, from the date each amount first came due.

Here, Bland is an enterprise engaged in commerce as defined under the FLSA. Doc. 1 at 6. Therefore, application of the NCWHA's exemption provision turns on the state law claims asserted by Roldan.

Plaintiff does not rely on any of the exempted provisions. Rather, he relies on N.C. Gen. Stat. §§ 95-25.13 (notification and records provision), 95-25.22 (recovery of unpaid wages), 95-

25.6 ("payday" provision), and 95-25.8 ("withholding of wages" provision). While he clearly seeks unpaid overtime wages, that is not his only claim. His unpaid wages claim is broader than any category listed in the exemption provision. Roldan seeks unpaid, earned, and accrued ("straight, promised, or overtime wages due to unpaid hours worked for required pre-shift activities, work performed during lunch breaks, and illegal uniform deductions") wages. Doc. 1 at 16-19.

In support of its argument that overtime claims brought under the NCWHA are exempt from coverage, Defendant relies on Sharkey v. Fortress Sys. Int'l, 3:18-cv-00018-FDW-DCK, 2019 WL 3806050 (W.D.N.C. Aug. 13, 2019). Although Sharkey is instructive, the allegations are distinguishable from those at issue here. In Sharkey, Plaintiffs alleged Defendants violated North Carolina General Statutes §§ 95-25.6, 95-25.7 and 95-25.13 "by failing to pay Plaintiffs all promised and earned wages and overtime payments on the employees' regular payday for all hours worked." Id. at *6. The Court concluded that because the plaintiffs relied on the failure to pay overtime wages and nothing in the Complaint suggested that "Defendants failed to pay [them] wages other than [] overtime," summary judgment for Defendants was appropriate. Id.

The Court acknowledges that Roldan similarly relies on N.C. Gen. Stat. §§ 95-25.13 and 95-25.6. But, unlike in Sharkey where the court found that "the evidence before the court in support of this claim relies wholly on failure to pay overtime wages," the same is not true here. 2019 WL 3806050 at *6. The evidence before the Court does not rely "wholly on failure to pay overtime wages." Id. Rather, Plaintiff seeks compensation for *all* hours worked – not just unpaid overtime wages under the NCWHA. Doc. 1 at 16-18.

District courts in the Fourth Circuit have reached different conclusions on whether payday claims for overtime under N.C. Gen. Stat. § 95.25-6 are exempted by N.C. Gen. Stat. §

13
Case 3:20-cv-00276-KDB-DSC    Document 29    Filed 03/15/21    Page 13 of 15

95-25.14. See, e.g., Lima v. MH & WH, LLC, No. 5:14-cv-896-FL, 2019 WL 2602142, at *1-2 (E.D.N.C. Mar. 8, 2019) (dismissing payday claim because "allowing plaintiff to recover overtime wages under the NCWHA, through the avenue of a 'payday' claim under § 95-25.6, would render meaningless the exemption for overtime claims in § 95-25.14(a)."); DeHoll v. Eckerd Corp., No. 1:18-cv-280, 2018 WL 5624150, at *5 (M.D.N.C. Oct. 30, 2018) (dismissing payday claim because it was not separate and distinct from FLSA claim); Mebane, 2020 WL 6525820, at *6 ("Plaintiffs' payday claim under N.C. Gen. Stat. § 95-25.6 is not exempted by § 95-25.14 nor preempted by FLSA and therefore declines to dismiss it under Rule 12(b)(6)."); Torres-Tinajero, 2020 WL 5411748, at *4 (M.D.N.C. Sept. 9, 2020) (holding Defendants liable for damages under the NCWHA for unpaid overtime wages if the FLSA should later be determined not to apply).[5]

The Court is satisfied that Roldan's claims under the NCWHA relate to all earned, accrued, and unpaid wages – not just unpaid overtime wages – and are not be exempted under N.C. Gen. Stat. § 95-25.14. Accordingly, the undersigned respectfully recommends that Defendant's Partial Motion to Dismiss or for Judgment on the Pleadings with respect to exemption be denied.

### III. RECOMMENDATION

---

[5] The Court is aware that in Torres-Tinajero, plaintiff brought a NCWHA claim in the alternative in case his employment was not covered by the FLSA, so the cases are not entirely in alignment.

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that "Defendant's Partial Motion to Dismiss or for Judgment on the Pleadings," Doc. 18, be **DENIED**.

## IV. <u>NOTICE OF APPEAL RIGHTS</u>

The parties are hereby advised that pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. <u>Diamond v. Colonial Life</u>, 416 F.3d 310, 315-16 (4th Cir. 2005); <u>Wells v. Shriners Hosp.</u>, 109 F.3d 198, 201 (4th Cir. 1997); <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. <u>Thomas v. Arn</u>, 474 U.S. 140, 147 (1985); <u>Diamond</u>, 416 F.3d at 316; <u>Page v. Lee</u>, 337 F.3d 411, 416 n.3 (4th Cir. 2003); <u>Wells</u>, 109 F.3d at 201; <u>Wright v. Collins</u>, 766 F.2d 841, 845-46 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to the parties' counsel <u>and to the Honorable Robert J. Conrad, Jr.</u>

**SO ORDERED AND RECOMMENDED.**

Signed: March 15, 2021

_____
David S. Cayer
United States Magistrate Judge