IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
CA No. 3:20-cv-00276-KDB-DSC

| | |
|---|---|
| MANUEL ROLDAN, on behalf of himself and all others similarly situated, | ) ) ) |
| *Plaintiff*, | ) ) ) |
| v. | ) ) ) |
| BLAND LANDSCAPING COMPANY, INC., | ) ) ) |
| *Defendant*. | ) |

## ORDER

This matter is before the Court on the Unopposed Motion for Final Approval of the Collective and Class Action Settlement. (Dkt. 65). Also, before the Court are the Unopposed Amended Motion for Attorneys' Fees and Reimbursement of Expenses, (Dkt. 53), and the consideration of Plaintiff's Unopposed Second Amended Motion for Preliminary Approval of Service Award. (Dkt. 58).

Named Plaintiff Manuel Roldan ("Plaintiff" or "Plaintiff Roldan"), Opt-in Plaintiff, and Rule 23 class members were employed as Foremen for Defendant from approximately February 22, 2017, until September 6, 2022. Plaintiff Roldan was employed from July 2019 until October 13, 2020. Plaintiff asserts that Defendant employed Plaintiff, the opt-in Plaintiff, and Fed. R. Civ. P. 23 ("R.23") class members (collectively "Plaintiffs") and failed to compensate Plaintiffs as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., and the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. §§ 95-25.1, *et seq*., by: (1) maintaining a corporate policy of failing to compensate Plaintiffs for all hours worked, including, but not limited to work performed during scheduled meal breaks; (2) maintaining a corporate policy of

failing to compensate for all hours worked, including but not limited to, overtime under the FLSA and the NCWHA; (3) making one (1) hour automatic deductions from daily shifts, irrespective of whether lunch breaks were taken; and (4) taking unauthorized deductions from Foremen's wages for unlawful cleaning fee charges. He further asserts that all Foremen were subject to these systemic policies and practices that violate both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*, and the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1 *et seq*. At bottom, Plaintiffs claims that Defendant improperly used the fluctuating workweek methodology, to compensate Foremen on a half-time basis, (in lieu of time and one-half), for hours over 40 per week. *See* 29 C.F.R. § 778.114 (a)(2).

This case involved extensive and meaningful discovery. In light of the Court granting Plaintiff's Motion to Certify Class, the Parties agreed to move the Court to stay the litigation in order to participate in non-binding mediation. On April 21, 2022, the Parties mediated with the assistance of the mediator, Bob Boston, and reached a class-wide settlement as described below. Dkt. 63-1.

On September 2, 2022, Plaintiff filed his Unopposed Amended Motion for Preliminary Approval of Settlement, consistent with the Parties' Revised Settlement Agreement of Class and Collective Action and Release of Claims, to (1) provisionally grant preliminary approval of the proposed class and collective action settlement (the Parties' "Revised Settlement Agreement"); (2) approve the appointment of CPT Group, LLC as settlement administrator; and (3) approve the proposed notice of the settlement and claim form.

On September 6, 2022, this Court granted preliminary approval of the settlement and approved the appointment of the settlement administrator and the proposed notices and claim form, subject to further consideration thereof at the Final Approval Hearing. Dkt. 64. Also, consistent

2

with the Parties' Revised Settlement Agreement, the Court set the deadline for members of the certified class to opt out of the settlement or submit an objection. *Id*. Pursuant to Rule 23(e) of the Fed. R. Civ. P., the Court scheduled a Fairness Hearing[1] to determine whether the proposed Revised Settlement Agreement is fair. *Id.*

Having considered the Plaintiff's Unopposed Motion for Final Approval, their Unopposed Motion for Attorneys' Fees and Expenses, their Unopposed Motion for Service Awards, and the supporting declarations, the oral argument presented at the December 19, 2022, Fairness Hearing, and the complete record in this action, for good cause shown:

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

1. Plaintiff's Unopposed Motion for Final Approval (Dkt. 65) is GRANTED and the Court finally approves the settlement as set forth in the Parties' Revised Stipulation and Settlement Agreement, (Dkt. 63-1) (the "Revised Settlement Agreement).

**Final Settlement Approval**

2. "It has long been clear that the law favors settlement." *United States v. Manning Coal Corp.*, 977 F.2d 117, 120 (4th Cir. 1992); *see also Reynolds v. Fid. Investments Institutional Operations Co., Inc.*, No. 1:18-CV-423, 2020 WL 91874, at *3 (M.D.N.C. Jan 8, 2020); *In re Paine Webber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998) (noting the "strong judicial policy in favor of settlements, particularly in the [class] action context."); *Reed v. Big Water Resort, LLC*, No. 2:14-cv-01583-DCN, 2016 WL 7438449, at *5 (D.S.C. May 26, 2016) (quoting same); William B. Rubenstein, 4 Newberg on Class Actions § 13.44, n1 (5th ed. Dec. 2019) (collecting cases).

3. The Court may approve a class settlement only if it is "fair, reasonable, and

---

[1] The Fairness Hearing was originally scheduled for December 13, 2022, at 10:00 am, but the Court rescheduled the hearing because of a conflict with a scheduled criminal trial to December 19, 2022, at 9:30 am.

adequate." Fed. R. Civ. P. 23(e)(2). "In applying this standard, the Fourth Circuit has bifurcated the analysis into consideration of fairness, which focuses on whether the proposed settlement was negotiated at arm's length, and adequacy, which focuses on whether the consideration provided the class members is sufficient." *Beaulieu v. EQ Indus. Servs., Inc.*, No. 5:06-CV-0400-BR, 2009 WL 2208131, at 23 (E.D.N.C. July 22, 2009) (citing e.g., *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158-159 (4th Cir. 1991)). The Court acts as a fiduciary of the class members. *Sharp Farms v. Speaks*, 917 F.3d 276, 293-94 (4th Cir. 2019).

## Procedural Fairness

4. The proposed settlement is procedurally fair and was reached through vigorous, arm's-length negotiations and after experienced counsel had evaluated the merits of Plaintiff's claims. *See West v. Const'l Inc.*, No., 3:16-cv-00502-FDW-DSC, 2018 WL 1146642, at *4 (W.D.N.C. Feb. 5, 2018) (unpublished) ("The [s]ettlement was not hastily arrived at. Indeed, the [s]ettlement followed lengthy discussions and considerable dialogue between the [p]arties, as well as arms-length negotiations involving extensive argument and counterargument."); *Matthews v. Cloud 10 Corp.*, No. 4:13-cv-646-FDW-DSC, 2015 U.S. Dist. LEXIS 114586, at *8 (W.D.N.C. Aug. 27, 2015) (unpublished); *Saman v. LBDP, Inc.*, No. DKC 12-1083, 2013 WL 294047, at *4 (D. Md. June 13, 2013) (unpublished); *In re Dollar Gen. Stores FLSA Litig.*, 2011 U.S. Dist. LEXIS 98162, at *12 (E.D.N.C. Aug. 22, 2011); *see also Toure v. Amerigroup Corp.*, No. 10 Civ. 5391 (RLM), 2012 WL 3240461, at *3 (E.D.N.Y. Aug. 6, 2012) (unpublished) (finding settlement to be "procedurally fair, reasonable, adequate, and not a product of collusion" after plaintiffs "conducted a thorough investigation. . . [and] enlisted the services of an experienced employment [law] mediator.").

5. Class Counsel conducted thorough investigations and evaluated the claims and

defenses, engaged in substantial discovery, and reached a settlement after mediation between the Parties with the assistance of Mediator Bob Boston. *See generally* Dkt. 63-1. These arm's-length negotiations involved counsel and a mediator well-versed in wage and hour law, raising a presumption that the Settlement meets the requirements of due process. Moreover, there is no evidence of any coercion or collusion or any other improper dealing that would lead to a finding that the negotiations were in any way unfair. *See West*, WL 1146642, at *5 ("[T]here is no evidence in the record before the court, nor has there been any suggestion by anyone, that there has been any fraud or collusion among the parties or their attorneys in the terms of this Settlement.").

**Fair, Adequate, and Reasonable**

6. The settlement is substantively fair and meets all factors of this analysis. *See Sharp Farms*, 917 F.3d at 299; *Berry*, 807 F3d at 614; *In re Jiffy Lube Sec., Litig.*, 927 F.2d at 158-59; *see also Detroit v. Grinnell Corp.*, 495 F.2d 448, 452 (2d. Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

7. The factors this Court considers are: (1) the posture of the case at the time the settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in FLSA class action litigation. *See Berry*, 807 F3d at 614; *Scardelletti v. Debarr*, 43 F. App'x 525, 528 (4th Cir. 2002) (per curiam) (unpublished); *In re Jiffy Lube Secs. Litig.*, 927 F.2d at 158-59.

8. Litigation through trial would be complex, expensive, and uncertain. Thus, the posture of the case at the time the settlement was proposed weighs in favor of final approval.

9. The class members' reaction to the settlement is positive. The form of the Court-approved notice sent to the Rule 23 Settlement Class (which appears to have been delivered to all but eight of the more than four hundred class members) informed the class members of their right
5

to object to or exclude themselves from the Settlement and explained how to do so. Only one Settlement Class Member objected to the proposed settlement, and no settlement class member requested exclusion. This favorable response demonstrates the class approves the settlement, which further supports final approval. *See e.g., West*, 2018 WL 1146642, R *6 (". . . . It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." (internal quotations omitted); *Deem v. Ames True Temper, Inc.*, No. 6:10-cv-01339, 2013 WL 2285972, at *2 (S.D.W. Va. May 23, 2013) (unpublished); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001) (collecting cases).

10. The parties have completed significant discovery, which supports settlement. The proper question is whether "Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *West*, 2018 WL 1146642, at *4; *see Riddle v. City of Anderson*, No. 8:12-cv-03480-TMC, 2015 WL 12830369, at *6 (D.S.C. Jan. 26, 2015) (unpublished). They did. The parties engaged in extensive written discovery during which Defendant shared an extensive amount of information, including payroll records, time records, paystubs, and other relevant documents during discovery. Also, Plaintiff conducted one 30(b)(6) deposition; Defendant conducted two (2) individual depositions of Named Plaintiff Roldan and Opt-in Plaintiff Surles. Further, Class counsel have had the benefit of both formal and informal discovery from the opt-in Plaintiff and Rule 23 class members. Moreover, briefing on Plaintiff's motion for conditional and class certification provided Plaintiff and his counsel with more information, all of which allowed them to evaluate the strengths and weaknesses of their case. Thus, the second factor weighs in favor of final approval.

11. "In complex, multi-year class actions, the risks inherent in the litigation are

immense." *In re MI Windows & Doors Prods. Liab. Litig.*, 2015 U.S. Dist. LEXIS 95889, at *8 (D.S.C. July 23, 2015) (citations omitted). Indeed, "settlement must be evaluated taking into account the uncertainty and risks involved in litigation and in light of the strength of the claims and possible defenses." *Id.*, 2015 WL 12850547, at *12 (D.S.C. July 22, 2015) (unpublished) (quotation omitted). To ultimately prevail, Plaintiffs would have needed to overcome probable attempts to decertify the FLSA collective action and certification of the Rule 23 Classes, as well as summary judgment. As other cases predicated on similar theories of liability suggest, this threat is real. Specifically, Plaintiff would have to overcome Defendant's arguments including, for example, whether certain plaintiffs were time-barred from recovering damages, whether one hour lunch breaks automatically deducted from Foremen's daily hours (irrespective of whether they took the lunch break) were appropriate; and, if not, whether it would be proper to presume a full five hour deduction; and whether Defendant owed unpaid wages, and/or whether amounts withheld from plaintiffs' wages were proper deductions under the NCWHA.

12. There is no evidence in the record concerning whether Defendant could withstand a greater judgment. However, even if Defendant could withstand a greater judgment, a "defendant['s] ability to withstand a greater judgment standing alone does not suggest that the settlement is unfair." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005); *see In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 178 n.9 (S.D.N.Y. 2000). Thus, given that all of the other factors weigh in favor of the proposed settlement, this factor is not an obstacle to final approval.

13. Finally, the substantial amount of the settlement weighs in favor of final approval. The determination of whether a settlement amount is adequate and reasonable "does not involve the use of a mathematical equation yielding a particularized sum." *Frank*, 228 F.R.D. at 186

7

(quotation omitted). This Court considers (1) the relative strength of the plaintiff's case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the Defendant and likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement. *See Sharp Farms*, 917 F.3d at 299; *In re Jiffy Lube Secs. Litig.*, 927 F.2d at 159; *West*, 2018 WL 1146642, at *4. The first two factors are the most important. *See Sharp Farms*, 917 F.3d at 299. As discussed, the Revised Settlement Agreement, reflecting the arm's length agreement of experienced counsel as well as the comments of the Court suggesting an enhanced, more certain recovery for class members, meets these factors.

## APPROVAL OF THE FLSA SETTLEMENT

14. The Court hereby approves the FLSA collective action settlement.

15. Settling parties routinely seek judicial approval of a proposed settlement to ensure fairness and to give effect to the FLSA releases. Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1353 n.8 (11th Cir. 1982); *McMahon v. Olivier Cheng Catering & Events LLC,* 08 Civ. 8713 (PGG), U.S. Dist. LEXIS 18913, at *15. Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of a settlement. *Lynn's Food Stores,* 679 F.2d at 1353-54. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Id.* at 1354; *McMahon,* 2010 U.S. Dist. LEXIS 18913, at *15.

16. Here, the settlement was the result of a formal mediation involving arm's length settlement negotiations. *See* Dkt. 63-1, at 4. During the entire process, Plaintiff and Defendant were represented by counsel experienced in wage and hour law. Accordingly, the Revised

Settlement Agreement resolves an actual dispute under circumstances supporting a finding that it is fair and reasonable.

17. The Court hereby approves the Rule 23 class action settlement.

18. Courts generally approve Rule 23 class action settlements when they are fair, reasonable, and adequate pursuant to Fed. R. Civ. P. 23(e). After due consideration and inquiry into the circumstances surrounding the proposed settlement of Plaintiff's collective FLSA claims and Rule 23 class claims under the NCWHA against Defendant, and review of the Revised Settlement Agreement, the Court finds and concludes that the proposed settlement in this case meets the standard for approval as it reflects a reasonable compromise of a *bona fide* dispute. The Court finds and concludes that the proposed settlement is just and reasonable and in the best interest of the Parties. The Court further finds the settlement to have been reached in good faith.

19. The Court also finds that the Parties' Revised Settlement Agreement is fair, reasonable, and adequate pursuant to Fed. R. Civ. P. 23 (e). The Court finds that the approved class representative Manuel Roldan and Class Counsel have adequately represented the class and that the settlement proposal was negotiated at arm's length. The Court further finds that the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed method of distributing relief to the class; (iii) the terms of the approved award of attorneys' fees and service awards, including timing of payment; and (iv) the Parties' Revised Settlement Agreement. The Court also finds that the settlement proposal treats class members equitably relative to each other. See Fed. R. Civ. P. 23(e)(2)(A)-(D).

## DISSEMINATION OF NOTICE

20. Pursuant to the Court's order preliminarily approving the Parties' settlement, (Dkt.

64) and its order dated September 6, 2022, all Rule 23 Settlement Members were sent court-approved notices by email, text message, and first-class mail at their last known address. Nearly all of the notices (approximately 98%) were delivered by one or more of the required methods.

21. The Notices fairly and adequately advised Settlement Class Members of the terms of the settlement, as well as the right of Rule 23 Settlement Class Members to opt-out of or to object to the settlement, and to appear at the fairness hearing. Settlement Class Members were provided with the best notice practicable under the circumstances.

22. The Notices and their distribution met with all constitutional requirements, including due process.

## AWARD OF FEES AND COSTS TO CLASS COUNSEL AND SERVICE AWARDS TO PLAINTIFF AND EARLY OPT-IN

23. The court hereby grants Plaintiff's Motion for Attorneys' Fees, inclusive of and accounting for litigation expenses, and awards Class Counsel $583,333.33.

24. Rule 23 and the FLSA both allow for the award of reasonable attorney's fees and expenses. *Hall v. Higher v. One Machs., Inc*., No. 5-15-CV670-F, 2016-WL 5416582, at *7 (E.D.N.C. Sept. 26, 2016). Rule 23(h) provides in relevant part that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The FLSA contains a fee-shifting provision: the court "shall, in addition to any judgment awarded to plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).

25. While many settlements, as here, calculate attorneys' fees as a percentage of the settlement fund ($583,333.33 is one third of the $1,750,000[2] fund) and such percentages have been affirmed, the Fourth Circuit generally uses the lodestar method for confirming a reasonable fee in an FLSA settlement (defined as a reasonable hourly rate multiplied by hours reasonably expended). *See Lyle v. Food Lion, Inc*., 954 F.2d 984, 988 (4th Cir. 1992); *Duprey v. Scotts Co. LLC*, 30 F. Supp. 3d 404, 411-12 (D. Md. 2014); *See Quaratino v. Tiffany & Co.,* 166 F.3d 422, 426 (2d Cir.1999) ("Congress enacted fee-shifting in civil rights litigation precisely because the expected monetary recovery in many cases was too small to attract effective legal representation.").

26. The Fourth Circuit considers twelve factors to evaluate the overall reasonableness of an award of attorney's fees: "(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between the attorney and client; and (12) attorneys' fees awards in similar cases." *Barber v. Kimbrell's Inc*., 577 F.2d216, 226 n.28 (4th Cir. 1978); *Mullinax*, 2014 WL 12774925, at *11 (applying the *Barber* factors to award attorney's fees in a hybrid FLSA and Rule 23 action).

27. Class Counsel's request for a fee of $583,333.33 is reasonable following

---

[2] The original settlement fund totaled $1,750,000, but has been increased by approximately $28,000 to account for payments being made to 9 additional class members not previously disclosed by the Defendant.

11

consideration of the twelve *Barber* factors. Class Counsel spent over 520 attorney hours and 197.4 hours of non-attorney time, a significant investment of labor and resources. Dkt. 67, ¶¶ 9-10. Class Counsel conducted extensive factual and legal research to determine the merits and scope of the claims, damages, and certain procedural matters. This research included prelitigation investigations, interviews with both named and opt-in Plaintiffs or class members, deposition preparation, written discovery, extensive briefing prior to filing the motion for conditional and class certification, and responding to Defendant's motion for judgment on the pleadings. *See Kirkpatrick v. Cardinal Innovations Healthcare Sols.*, 352 F. Supp. 3d 499, 505 (M.D.N.C. 2018) ("[T]he novelty and difficulty of the questions raised weighs in favor of approving the fee because collective/class counsel has to address procedurally and substantively complex FLSA issues," such as a question addressed by little Fourth Circuit caselaw.") The court hereby grants Plaintiffs' Motion for Attorneys' Fees and awards Class Counsel $583,333.33, in accordance with the terms of the Revised Settlement Agreement.

28. Class Counsel's request for $583,333.33 of the proposed Revised Settlement Fund represents a lodestar multiplier of 1.85, which has been found to be "modest" in the Fourth Circuit, further supporting Class Counsel's requested award. *Smith v. Krispy Kreme Doughnut Corp.*, 2007 WL 119157, at *1–3 (M.D.N.C. Jan. 10, 2007) (approving a "modest" multiplier of 1.6); *Kirkpatrick v. Cardinal Innovations Healthcare Sols.*, No. 1:16-CV-01088, 2018 WL 6718948, at *5 (M.D.N.C. Dec. 18, 2018) (finding a multiplier of 1.8 "well within the normal range of lodestar multipliers); *Kruger v. Novant Health, Inc.*, No. 1:14CV208, 2016 WL 6769066, at *4–5 (M.D.N.C. Sept. 29, 2016) (approving a one-third fee of 3.69 times the lodestar).

29. While one Class Member objected to Class Counsel's requested Fees and costs by emailing Class Counsel, the message states only a bare objection and provides no specific grounds

12

for declining the request. Further, the Class Member did not comply with the requirements as laid out in the Notice of Settlement, which required objecting Class Members to file a written objection with the U.S. District Court for the Western District of North Carolina and serve copies on counsel for the Parties. *See* Dkt. 63-1, at 48-49. In any event, the conclusory objection of a single Rule 23 class member does not indicate any broad dissatisfaction with the settlement, but rather provides support for Class Counsel 's fee request. *See e.g., In re Outer Banks Power Outage Litig.*, 2018 U.S. Dist. LEXIS 161714, at *9.

30. The attorneys' fees and the amount in reimbursement of expenses shall be paid from the Gross Settlement Fund in accordance with the Revised Settlement Agreement.

31. The Court also finds reasonable an award for Named Plaintiff Manuel Roldan in the amount of $25,000.00 for his service award as Named Plaintiff/Class Representative for the asserted FLSA/Rule 23 collective/class wage and hour claims and his commitment to this lawsuit and its continued litigation (i.e., engaging in written discovery, preparing for mediation and engaging in settlement negotiations for the benefit of the Settlement Class and Settlement Collective, and sitting for a deposition) and Opt-in Plaintiff J.M. Surles in the amount of $15,000 for responding to Defendant's written discovery requests and sitting for a deposition.

32. The service awards are in recognition of the assistance provided during the pre-litigation phase, providing the necessary employment details, documents, paystubs, and discussion regarding compensation practice concerns to Class Counsel and reflect their contribution to achieving the Settlement on behalf of the Rule 23 Settlement Class and all Participating FLSA Collective Members. These amounts shall be paid from the Gross Amount of Awarded Attorneys' Fees in accordance with the terms of the Revised Settlement Agreement.

33. A service award of $ 25,000.00 or less is well within the range of reasonable

incentive awards approved by the courts.[3] *McCurley v. Flowers Foods, Inc.*, No. 5:16-CV-00194-JMC, 2018 WL 6650138, at *8 (D.S.C. Sept. 10, 2018); *Savani v. URS Prof'l Sols. LLC*, 121 F. Supp. 3d 564, 577 (D.S.C. 2015) (citing *In re Auto. Refinishing Paint Antitrust Litig.*, No. 1426, 2008 WL 63269, at *7-8, (E.D. Pa. Jan. 3, 2008) (approving a $ 30,000 award for each class representative); *McBean v. City of New York,* 233 F.R.D. 377, 391–92 (S.D.N.Y. 2006) (stating incentive awards of $ 25,000 are "solidly in the middle of the range"). Given the achievements for the absent class members and the consistency of these amounts with service payments awarded in other cases in this Court and this circuit, the court finds that these service payments are appropriate here. Significantly, the court notes that the service award amount does not detract from or reduce the monetary relief to the Class.

34. Consistent with the terms of the Revised Settlement Agreement, the "Effective Date" of the settlement shall be as defined in the Revised Settlement Agreement. This Order shall constitute a judgment for purposes of Rule 58 of the Federal Rules of Civil Procedure.

## SETTLEMENT ADMINISTRATOR

35. The Court confirms its prior Order appointing CPT Group as the Settlement Administrator in this case, Dkt. 64, and the duties CPT Group was previously ordered to perform therein in conjunction with any order granting final approval to the Settlement in this action.

36. Consistent with the Court's prior Order appointing CPT Group as Settlement Administrator, CPT Group shall determine the total amount of its services and expenses in connection with the administration of the settlement in this action prior to the distribution of any

---

[3] Plaintiff's counsel diligently sought service awards of $45,000 for Plaintiff Roldan and $20,000 for Plaintiff Surles. While the Court acknowledges the value of the service each provided, the Court finds that the amounts being awarded are appropriate given the relatively early stage at which this action was resolved and the prior service awards given by this Court in other cases.

14

amounts from the Qualified Settlement Fund it established in connection with this Settlement, and its costs and expenses for the administration of the settlement will be paid upon receipt of Defendant's deposit of the Maximum Gross Amount into the Qualified Settlement Fund.

37. No later than thirty (30) days after the Effective Date as defined in the Revised Settlement Agreement, the Settlement Administrator will establish and maintain a qualifying designated settlement fund pursuant to Section 468(B) of the Internal Revenue Code ("Qualified Settlement Fund" or "QSF") in accordance with the terms of the Revised Settlement Agreement.

38. Within fifteen (15) calendar days after the Settlement Administrator establishes a Qualified Settlement Fund or forty-five (45) days after the Court enters an Order Granting Final Approval of the Agreement, whichever is later, Defendant shall deposit into the Qualified Settlement Fund the necessary portion of the Maximum Gross Settlement Amount required to satisfy the approved Settlement Administrator's costs, Settlement Payments to Authorized Claimants, and Plaintiff's Attorneys' Fees and Costs.

39. Plaintiff's Attorneys' Fees and Plaintiffs' Litigation Expenses, as authorized by the Court, will be paid by the Settlement Administrator from the Gross Settlement Amount within five (5) calendar days after Defendant deposits the amounts into the Settlement Fund.

40. The Settlement Administrator will pay the Named and Opt-In Plaintiffs' Service Awards ordered by the Court directly to the individuals ordered by the Court to receive such payments within five (5) calendar days after Defendant deposits these amounts into the Settlement Fund, but reduced from the approved Attorneys' fees and costs.

41. Within twenty-one (21) calendar days of Defendant's payment of the Gross Settlement Amount described in Part V.B.1. of the Revised Settlement Agreement (Dkt. 63-1) is received by the Settlement Administrator, the Settlement Administrator will issue Settlement

Payments via checks sent by U.S. Mail to each Authorized Claimant. Those members of the Settlement Class who have properly and timely opted out of the Settlement are not Authorized Claimants and are not entitled to a Settlement Payment.

42. Upon the Effective Date, this litigation shall be dismissed with prejudice, and all Rule 23 Class Members who did not timely exclude themselves from the settlement, Opt-in Plaintiffs, and the Named Plaintiff shall be permanently enjoined from pursuing and/or seeking to reopen claims that have been released pursuant to the settlement. Specifically, as stated in the Revised Settlement Agreement, this means:

> As of the Effective Date, Named Plaintiff, Opt-in Plaintiffs, Authorized Claimants, and Members of the Settlement Class hereby forever completely settle, compromise, release, and discharge Defendant from (i) any and all claims asserted in the Litigation; and (ii) any and all claims for unpaid wages, minimum wages, overtime, or promised wages, damages, or related injunctive relief including but not limited to claims under North Carolina state law, including but not limited to the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1, *et seq*., and other applicable law, including wage payment claims, and other statutory and common law theories regarding wages. In addition to the foregoing, as of the Effective Date, Named Plaintiff, Authorized Claimant, and Members of the Collective Class hereby forever completely settle, compromise, release, and discharge Defendant from any and all claims for unpaid wages, minimum wages, overtime, or promised wages, damages, or related injunctive relief, including but not limited to claims under the federal FLSA, 29 U.S.C. § 201, *et seq.* The settlements, compromises, releases, and discharges described in this paragraph shall extend to all, but only to any such claims that arose at any time up to the date on which the Court grants final approval of the settlement.

Dkt. 63-1, § V.A.1.

43. Pursuant to the Revised Settlement Agreement, the Named Plaintiff, Opt-in Plaintiffs, and all Rule 23 Settlement Class Members who did not timely request exclusion are further barred from accepting, recovering, or receiving any back pay, liquidated damages, or other damages, or any other form of relief based on any claims asserted or settled in this action which

16

may arise out of, or in connection with any other individual, class, collective, representative, administrative, or arbitral proceeding pursued by any individual, class, union, or federal, state or local governmental agency against Defendant, and are enjoined from pursuing any claim released as part of this settlement. (Dkt. 63-1§ V(A)(1)), with the exception that for those Rule 23 Settlement Class Members who did not opt into the FLSA action, their FLSA claims are preserved. The Court retains jurisdiction over this action for the purpose of enforcing the Revised Settlement Agreement and overseeing the distribution of settlement funds. The Parties shall abide by all terms of the Revised Settlement Agreement, which are incorporated herein, and this Order.

SO ORDERED.

Signed: December 19, 2022

Kenneth D. Bell
United States District Judge